IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENNETT REGULATOR GUARDS, INC., | ) | CASE NO. 1:04CV177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| CANADIAN METER COMPANY, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OF OPINION</u> |

On February 2, 2004, Bennett Regulator Guards, Inc., plaintiff, filed this action for patent infringement against Canadian Meter Company, Inc. and American Meter Company, defendants. On September 14, 2004, the Defendants filed a Motion For Summary Judgment of Invalidity (Docket No. 33). The parties have fully briefed these issues.

For the following reasons, the motion is GRANTED.

I. <u>FACTS</u>

The Plaintiff is the owner of U.S. Patent No. 5,810,029 (the "'029 patent"), which issued on September 22, 1998 from an application filed on June 16, 1995. The patent stems from an invention that the Plaintiff alleges was completely designed as of "late July or August 1994". (Plaintiff's Response at 3, ¶ 6.) The '029 patent claims an invention associated with a pressure valve used in a natural gas

distribution system. The valve converts gas flow from high pressure in the distribution lines to low pressure suitable for use by residents and businesses. The claimed invention provides a means for preventing failure of the valve due to ice formation. The Plaintiff alleges that the Defendants have infringed claims 1, 2, 5 and 6 of the '029 patent.

The Defendants are affiliated companies, one American and one Canadian. In the 1980s, Canadian utilities and gas equipment manufacturers began to develop new products in response to injuries caused when frozen gas regulators failed. They sought new products that would prevent ice buildup on the gas regulators from freezing precipitation and splashing water. At that time, Mike Waddell was the Quality Assurance and Technical Support Manager of Defendant Canadian Meter. In 1990, he began the design and development of the Defendants' Splash Guard product, which is the product accused of infringement in this case. (Waddell Aff. at ¶ 16.)

The Defendants allege that the Splash Guard product (originally called "Vent Shield") was disclosed to the public as early as 1991, long before the Plaintiff developed the claimed invention. The Defendants state that prototypes were created for regulatory evaluation in 1991 in both the United States and Canada. Specifically, the Canadian Gas Association ("CGA") evaluated the Defendants' product in October 1991 in Nebraska City, Nebraska. On December 23, 1991, the CGA certified the product for use. (Barnett Aff. at ¶ 5, Exs. 2, 14; Poole Aff. at ¶ 5.)[1] In addition, a drawing of the

---

[1] Bruce L. Barnett is Vice President and General Manager of Defendant Canadian Meter, and the Vice President and General Manager of North American Service Group, a division of Defendant American Meter. (Barnett Aff. at ¶¶ 2-3.) During the relevant time period, John H. Poole was the General Manager of Defendant Canadian Meter and a Vice President of Defendant American Meter. (Poole Aff. at ¶ 2.)

product, entitled "Splash Guard Proportional Scaling" and dated April 27, 1992, was disclosed around that time to potential customers in the United States and Canada. (Waddell Aff. at ¶ 22, Exs. 2, 8.)

The Defendants allege that also in April 1992, a public announcement was distributed in the United States and Canada regarding the regulatory approval of the Splash Guard product. The document, entitled the "Quality Communique", contained an engineering drawing of the Splash Guard product that Waddell had made on or about March 25, 1992. The Defendants allege that this drawing contains all the information needed to make the Splash Guard product, including dimensions, configuration, and materials. (Barnett Aff. at ¶ 6-7, Exs. 3, 4; Waddell Aff. at ¶ 5, Ex. 2.)

The Defendants assert that following Canadian regulatory approval, they began marketing Splash Guard in the United States as well. John Poole, a Vice President at Defendant American Meter, was responsible for overseeing the marketing of new products. He has provided an affidavit alleging that samples of the product were distributed to American Meter's sales force, and in March 1992, a direct mailing was sent to American utilitiy companies. On April 30, 1992, Waddell requested funding for tooling to produce 1000 units, and commercial promotion allegedly began later that year. (Poole Aff. at ¶¶ 7-11; Barnett Aff. at ¶ 8, Ex. 5; Waddell Aff. at ¶ 15.)

Poole claims that he personally conducted a sales tour in the Great Lakes region in the 1992-1993 time period. He provided various gas companies with product samples and the Quality Communique. (Poole Dec. at ¶¶ 10-11.) Another sales representative, Phillip Holdbrooks, allegedly took samples to a sales call in the summer of 1992 to Atlanta Gas Light of Atlanta, Georgia. Holdbrooks alleges in a declaration that Atlanta Gas Light ordered twelve samples for field evaluation in the 1992-1993 time period. He visited other gas companies during the same time period. Atlanta

-3-

Gas Light eventually purchased Splash Guard products in 1996. (Holdbrooks Dec. at ¶¶ 6-11.)

The Defendants allege that their development and sales conduct invalidates the '029 patent as a matter of law. They also claim that the Quality Communique invalidates the '029 patent because the drawing attached to the Quality Communique discloses each and every element of the claimed invention.

On June 24, 2002, the Plaintiff filed an application in the United States Patent and Trademark Office ("PTO") for reexamination of the '029 patent. The purpose of the reexamination was to afford the PTO an opportunity to consider whether the Quality Communique invalidates the '029 patent. On June 24, 2003, the PTO issued Reexamination Certificate No. 5,810,029 C1, thereby confirming the validity of the '029 patent in view of the Quality Communique. The Defendants argue that the PTO's decision is erroneous and stems from misrepresentations made by the Plaintiff during the reexamination proceedings.

## II. LAW

### A. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of the non-movant's claim or by demonstrating "an absence of evidence to support the non-moving party's case."

-4-

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant meets this burden, the non-movant must "set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law identifies which specific facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). However, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

B. Patent Invalidity By Anticipation

35 U.S.C. § 102 states in relevant part:

> A person shall be entitled to a patent unless--
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

An issued patent is presumed valid. 35 U.S.C. § 282. To overcome the presumption of validity, an

-5-

accused infringer bears the burden of proving invalidity by clear and convincing evidence. Medtronic, Inc. v. Intermedics, Inc., 799 F.2d 734, 741 (Fed. Cir. 1986), cert. denied, 479 U.S. 1033 (1987).

The Defendants assert that the '029 patent is invalid because it is anticipated by the accused product pursuant to 35 U.S.C. 102 (a) and/or (b). Anticipation under section 102(a) or (b) is a question of law based upon underlying questions of fact. Accordingly, summary judgment is appropriate if none of the underlying facts are in dispute. Smithkline Beecham Corp. v. Apotex Corp., 365 F.3d 1306, 1316 (Fed. Cir. 2004); Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1320 (Fed. Cir. 2002).

Anticipation requires a determination that each and every element of the claimed invention be found either expressly or inherently in a single prior art reference. The reference also must be of sufficient detail to enable one of ordinary skill in the art to make and use the claimed invention. Transclean Corp. v. Bridgewood Services, Inc., 290 F.3d 1364, 1370 (Fed. Cir. 2002); Bristol-Myers Squibb Co. v. Ben Venue Laboratories, Inc., 246 F.3d 1368, 1374 (Fed. Cri. 2001); Carella v. Starlight Archery and Pro Line Co., 804 F.2d 135, 138 (Fed. Cir. 1986); In re Donohue, 766 F.2d 531, 533-34 (Fed. Cir. 1985).

### III.  ANALYSIS

The Defendants assert that the '029 patent is invalid because, prior to the invention by the named inventor, "the invention was known or used by others in this country, or . . . described in a printed publication in this or a foreign country". 35 U.S.C. § 102(a). The Defendants also assert that the '029 patent is invalid because it was "described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for

patent in the United States". 35 U.S.C. § 102(b).

    A. <u>Invalidity By Printed Publication</u>

The Defendants argue that the '029 patent is anticipated by the Quality Communique . Both 35 U.S.C. § 102(a) and (b) provide that a patent is invalid if the claimed invention is previously "described in a printed publication in this or a foreign country". Under section 102(a), the publication must be dated prior to the date of invention. Under section 102(b), the publication must be dated more than one year prior to the date of the application for patent. The parties do not dispute that the date requirement is satisfied by the Quality Communique . The Plaintiff, however, argues that the disclosure in the Quality Communique is insufficient to invalidate the '029 patent.

As stated above, to prove anticipation the Defendants must demonstrate that the alleged anticipatory reference contains each and every element of the claimed invention. When the alleged invalidity is based upon a printed publication, the disclosure must be "enabling". To be enabling, one of ordinary skill in the art must be able to practice the claimed invention based upon the publication. It is not necessary that an object disclosed in a printed publication actually has been made. <u>Minnesota, Mining and Manufacturing Co v. Chemque, Inc.</u>, 303 F.3d 1294, 1301 (Fed. Cir. 2002); <u>In re Donohue</u>, 766 F.2d 531, 533 (Fed. Cir. 1985). A document qualifies as a "publication" if it is accessible to members of the public who are interested in the art. <u>Carella v. Starlight Archery and Pro Line Co.</u>, 804 F.2d 135, 139 (Fed. Cir. 1986); <u>In re Hall</u>, 781 F.2d 897, 898-99 (Fed. Cir. 1986).

The Plaintiff asserts that the Quality Communique is not enabling. It presents an expert witness opinion in support of its position that the product description and drawing in the Quality Communique do not disclose each and every element of the claimed invention. The Plaintiff also relies upon the

PTO's conclusion during the reexamination proceedings that the Quality Communique does not invalidate the '029 patent.  The presumption of validity is strongest when the prior art at issue has been considered by the patent office.  McGinley v. Franklin Sports, Inc., 262 F.3d 1339, 1353 (Fed. Cir. 2001); American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir.), cert. denied, 469 U.S. 821 (1984).  The Court concludes that the opinions of the Plaintiff's expert witness, combined with the PTO's decision, is sufficient to create a justiciable issue as to whether the Quality Communique anticipates the claimed invention.  As to this ground, summary judgment is denied.

   B.  Invalidity By Sales or Offers For Sale

The Defendants next argue that the '029 patent is invalid because of the sales activity relating to their Splash Guard device, the accused product.  A patent is invalid if the claimed invention was "on sale in this country, more than one year prior to the date of the application for patent in the United States".  35 U.S.C. § 102(b).  Here, the one-year date, commonly referred to as the "critical date", is June 16, 1994.

Anticipation under the "on sale" doctrine has two elements: (1) the product must be the subject of a commercial sale or offer for sale, and (2) the device must be ready for patenting.  The second prong can be satisfied by either proof of reduction to practice before the critical date, or proof that before the critical date there existed drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.  Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 67-68 (1999);  Smithkline Beecham Corp. v. Apotex Corp., 365 F.3d 1306, 1316-17 (Fed. Cir. 2004); Netscape Communications Corp. v. Konrad, 295 F.3d 1315, 1323 (Fed. Cir. 2002).

Again, the Defendants must first prove that the alleged anticipatory reference contains each and every element of the claimed invention. This requirement essentially corresponds to the second prong of the on-sale doctrine stated above. The anticipatory reference relied upon by the Defendants is the Splash Guard product itself. When, as here, the anticipatory reference is the same as the product accused of infringement, the first requirement for anticipation is satisfied.

The whole basis for the infringement suit is the Plaintiff's allegation that the accused Splash Guard product contains each and every element of the claimed invention. It is, therefore, appropriate to assume for the purposes of an anticipation analysis that there is correspondence between the features of the accused product and the claimed invention. When the anticipatory reference is the accused product, the Defendants' burden is satisfied by the Plaintiff's infringement allegations in the Complaint that the accused product embodies the claimed invention. Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir.), cert. denied, 531 U.S. 821 (2000); Evans Cooling Systems, Inc. v. General Motors Corp., 125 F.3d 1448, 1451 (Fed. Cir. 1997), cert. denied, 522 U.S. 1115 (1998). The Defendants, therefore, have demonstrated that an embodiment of the claimed invention was reduced to practice prior to the critical date.[2]

The Plaintiff, however, argues that the evidence is insufficient to grant summary judgment that

---

[2] The Plaintiff argues that if summary judgment is denied, the Defendants' should be precluded from arguing non-infringement. The Court notes that the case law states that a defendant may assume infringement for the purposes of seeking summary judgment by anticipation, and yet still plead non-infringement as an alternative. Vanmoor, 201 F.3d at 1366; Evans, 125 F.3d at 1451. At this time, the Court expresses no opinion as to whether the Defendants' current position on anticipation precludes them from a subsequent denial of infringement.

any sale or offer for sale occurred. The Defendants submit the affidavits or declarations of five employees and former employees who attest to making sales calls to Untied States customers prior to the critical date. If deemed true, such statements would be sufficient to establish an on-sale bar. The Plaintiff argues that the affidavits and declarations must be rejected because they are not corroborated by documentary evidence.

The Plaintiff cites numerous cases enforcing a corroboration requirement. (See Plaintiff's Response at 19.) The Defendants do not deny the existence of the corroboration requirement, but instead argue that the requirement is satisfied by the documents attached to the affidavits.

Of such documents, however, only one refers to an actual sale or offer for sale. (See Holdbrooks Dec., Ex. 2.) That document is an invoice for a sale to Atlanta Gas Light dated November 20, 1996, *after* the critical date. The document by itself, therefore, does not demonstrate an on-sale bar. Aside from this sole invoice, no other documents make explicit reference to sales activity. For example, the documents do not contain price quotes, shipping references, or other aspects of sales.

The Defendants seek a broader application of the corroboration requirement. They argue that although the documents do not specifically reference sales activity, they demonstrate contacts with third parties consistent with sales and marketing efforts prior to the critical date. Essentially, they argue for corroboration by inference of offers for sale prior to the critical date. It may be that a jury could infer sales activity from the documents, and thus conclude that the oral statements of the employees are credible. However, such proof is not sufficient to grant summary judgment as to the on-sale bar. Accordingly, as to this ground, summary judgment is denied.

### C. Invalidity By Public Knowledge or Use

The Defendants allege that the claimed invention was "known or used by others in this country . . . before the invention thereof by the applicant for patent", or "in public use . . . in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(a) and (b). The analysis of public knowledge and/or use bears some similarity to the analysis of the on-sale bar. In particular, the prior art reference at issue is the accused product itself. Accordingly, based on Vanmoor and Evans, the Defendants satisfy the burden of showing that the anticipatory reference, the Splash Guard product, contains each and every element of the claimed invention. The issue is whether the product was publicly known and/or used in the United States.

The Plaintiff first asserts that any alleged knowledge or public use did not occur "in this country". Its own brief, however, belies this contention. There can be no dispute that the claimed invention, embodied in the Splash Guard product, was known "in this country". The Plaintiff cannot argue that Defendant American Meter lacked knowledge of the accused product. In fact, the Plaintiff relies on the close relationship between the two Defendants to argue that their combined knowledge and use was not public. The Plaintiff states that the Defendants jointly developed the Splash Guard product, shared development costs, and jointly participated in testing work. The Plaintiff recognizes: "All of the available evidence suggests that the two companies operated as a single entity concerning development and marketing of the SPLASH GUARD product." (Plaintiff's Response at 17.) Therefore, the knowledge of the two Defendants are equal, and American Meter's involvement renders any knowledge or use to be "in this country". The issue, therefore, is whether the Defendants' knowledge and use was "public".

Any alleged prior knowledge or use of the invention must have been public. <u>Minnesota, Mining and Manufacturing Co v. Chemque, Inc.</u>, 303 F.3d 1294, 1301 (Fed. Cir. 2002); <u>Woodland Trust v. Flowertree Nursery, Inc.</u>, 148 F.3d 1368, 1370 (Fed. Cir. 1998). "Public use includes any use of the claimed invention <u>by a person other than the inventor</u> who is under no limitation, restriction or obligation of secrecy <u>to the inventor</u>." <u>Netscape Communications Corp. v. Konrad</u>, 295 F.3d 1315, 1323 (Fed. Cir. 2002) (citations omitted, emphasis added); <u>see</u> <u>also</u> <u>Chemque</u>, 303 F.3d at 1301; <u>Smithkline</u>, 365 F.3d at 1316-17. Use and knowledge are public so long as the claimed invention is <u>accessible</u> to the public. <u>Carella v. Starlight Archery and Pro Line Co.</u>, 804 F.2d 135, 139 (Fed. Cir. 1986) (emphasis added).

By the explicit language of the cases cited above, whether use or knowledge is public is determined with reference to the inventor. The cases refer to "public use" as <u>any use by someone other than the inventor</u> (or other than one with an obligation of secrecy to the inventor). The Defendants are not affiliated with the inventor and are thus members of the "public" for the purpose of this analysis. Therefore, the Defendants' own knowledge and use of the claimed invention arguably invalidates the patent even if they never disclosed the device to anyone else.

Some of the language in the cases cited above can be interpreted as standing for the proposition that secret use even by one not affiliated with the inventor will not invalidate a patent. Here, however, the evidence shows that the Defendants' knowledge and use of the claimed invention, as embodied in the Splash Guard product, was public. Again, the Defendants rely on the employee affidavits and declarations, which raise the same corroboration issues as applicable to the on-sale bar. With respect to public use and knowledge, however, the witness statements are corroborated by the documentary

evidence.

The evidence demonstrates that there was no effort by the Defendants to maintain as secret the development of the Splash Guard product. Around October 1991, personnel from the CGA, the Canadian trade certification organization, came to Nebraska City, Nebraska to evaluate the efficacy of the Defendants' product. (Barnett Aff., Ex. 14.)[3] The Plaintiff argues that Exhibit 14 to the Barnett Affidavit does not demonstrate that CGA personnel actually came to Nebraska City. The Plaintiff maintains that testimony from CGA personnel who were actually there is required for corroboration. The Court disagrees with such a strict reading of the corroboration requirement.

On December 23, 1991, the CGA certified the Defendants' product as meeting appropriate safety standards for protecting gas distribution valves from freezing. Defendant American Meter is identified as a "Listee" on the certification document. (Barnett Aff., Ex. 2.) The certification document not only demonstrates public use, but also corroborates the other document and statements referencing the Nebraska City testing. In addition, the CGA certification is not a confidential document.

Indeed, far from being secret, the certification was touted by the Defendants in public disseminations of information about the Splash Guard product. The disputed Quality Communique, dated April 1992, announces "Domestic Regulatory Approval" of the Defendants' product. (Barnett Aff., Ex. 3.) The Defendants' witnesses state that the Quality Communique was sent to American Meter in the United States for distribution to American customers. These statements are corroborated by the documents. A distribution list for the Quality Communique indicates that it was sent to American

---

[3] Many of the documents are attached to more than one affidavit or declaration. For simplicity, the Court provides only one record citation per document.

-13-

Meter facilities in Erie, Pennsylvania and Nebraska City, Nebraska. (Barnett Aff., Ex. 4.) Although the specific distribution list submitted is dated from 1995, the Defendants submit two earlier letters to support the witnesses' statements that information about the CGA certification of their product was shared with customers in the United States. One such letter was sent to Bay State Gas Co. of Brockton, Massachusetts. It is dated April 5, 2004, prior to the critical date. The second letter is dated March 24, 1992 and was sent to Vermont Gas Co. of Burlington, Vermont. (Barnett Aff., Exs 5 and 6.) These documents demonstrate that the Splash Guard product was publicly known and/or used in this country prior to the critical date.

Furthermore, on July 15, 1992, Waddell sent Barnett a memorandum regarding the Splash Guard product. John Poole was copied. At the time, Barnett and Poole were officers of both Defendants, and as the Plaintiff itself recognizes, the efforts of American Meter and Canadian Meter were joint. The memorandum is a cover letter to a shipment of forty product assemblies for evaluation by customers. It states: "Please advise of future requirements and customer feedback." (Barnett Aff., Ex.10, emphasis added.) These documents corroborate the witnesses' statements that the knowledge and use of the claimed invention were public.

The Court concludes that the corroborative documentary evidence of public knowledge and use is substantial and constitutes clear and convincing evidence of invalidity. The Plaintiff seeks to elevate the corroboration requirement beyond any reasonable application. Viewed as a whole, the documentary evidence shows that in 1991, the accused product was shown to third parties, specifically CGA members, in the United States. The CGA certified the product, and information about the product and the certification was disseminated to interested third-party companies, including at least

-14-

two in the United States. Given this evidence, the Plaintiff is obligated to do more than deny the credibility of the Defendants' witnesses in speculative and conclusory fashion. Rather, the summary judgment standard requires that the Plaintiff identify specific contrary evidence that creates a justiciable issue for trial. It has not done so.

The Plaintiff argues that the Defendants' documentary evidence of public use or knowledge is not enabling. The Plaintiff, however, confuses public use with anticipation by printed publication. With respect to public use, the prior art reference is not a document. Rather, the reference is the accused product itself, which pursuant to Vanmoor and Evans is deemed to contain each and every element of the claimed invention. The issue, therefore, is whether the Defendants' *use or knowledge* of the accused product was enabling, not whether the supporting evidence is.

The documents show that CGA personnel evaluated the Splash Guard product in Nebraska City, Nebraska in 1991. Such disclosure necessarily was enabling. If not, there would be no basis upon which the CGA could grant or deny the certification. The documents also show that product samples were created for evaluation by customers. Again, customers could not evaluate the product unless such product disclosures were enabling. Thus, the documents show that the *use or knowledge* of the Splash Guard was both public and enabling, even if no single piece of documentary evidence otherwise anticipates the claimed invention.

The Plaintiff argues that it is not enough for the Defendants merely to have "generally described" the device to customers. Even if a true statement of the law, the facts do not support the Plaintiff's simplistic characterization of events. Baxter International, Inc. v. Cobe Laboratories, Inc., 88 F.3d 1054 (Fed. Cir. 1996) is instructive because, like here, Baxter involved alleged independent

development by a third party unaffiliated with the inventor.  The device at issue was a centrifuge.  The Federal Circuit found clear and convincing evidence of public use when third parties "observed the centrifuge in operation and who were under no duty of confidentiality".  Id. at 1059.  The Defendants' relationship with both the CGA members and its customers is akin to the situation in Baxter.  Use and knowledge are public so long as the claimed invention is accessible to the public. Carella v. Starlight Archery and Pro Line Co., 804 F.2d 135, 139 (Fed. Cir. 1986).  Here, the evidence is clear and convincing that the Defendants made the Splash Guard product accessible to members of the public interested in the art.

      Relatedly, the Plaintiff argues that any evaluations by the CGA (or others) were "experimental use".  Experimental use negates public use.  Baxter, 88 F.3d at 1059.  The evidence shows, however, that the product evaluations were done primarily for commercial, not technical, purposes.  The CGA certification was part of a marketing plan, as evidenced by the announcement in the Quality Communique.  Similarly, the evidence shows that customer evaluations likewise were solicited for the purpose of generating commercial interest.  There is no evidence than any of these evaluations form part of the development of the technical features of the Splash Guard product.

      In addition, Baxter rejects the applicability of the experimental use doctrine when the alleged experimental use is done by a party who is not affiliated with the inventor:

> The experimental use doctrine operates in the inventor's favor to allow *the inventor* to refine his invention or to assess its value relative to the time and expense of prosecuting a patent application.  If it is not the inventor or someone under his control or "surveillance" who does these things, there appears to us no reason why he should be entitled to rely upon them to avoid the statute.

Baxter, 88 F.3d at 1060.  Under Baxter, the Plaintiff's argument for experimental use lacks merit

-16-

because the Defendants were never affiliated with the inventor.

For the foregoing reasons, the Court concludes that the Defendants have offered clear and convincing evidence that the claimed invention was publicly known and/or used pursuant to 35 U.S.C. § 102(a) and (b). The Plaintiff does no more than deny the credibility of witness statements in conclusory and speculative fashion, but does not present any evidence that would create a justiciable issue for trial as to pubic knowledge and/or use. Accordingly, summary judgment is granted.

## IV. CONCLUSION

For the forgoing reasons, the Court holds that the Defendants have presented clear and convincing evidence that the claimed invention was "known or used by others in this country . . . before the invention thereof by the applicant for patent" pursuant to 35 U.S.C. § 102(a), and "in public use . . . in this country, more than one year prior to the date of the application for patent in the United States" pursuant to 35 U.S.C. § 102(b).

Accordingly, the Defendants' Motion For Summary Judgment of Invalidity (Docket No. 33) is GRANTED, and this action is hereby dismissed with prejudice, each party to bear its own costs. All other pending motions are moot.

IT IS SO ORDERED.


Issued: May 10, 2005                 s/ John M. Manos
                                                     UNITED STATES DISTRICT JUDGE